IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FLORENCE MUSSAT, M.D., S.C., an Illinois Corporation, individually and on behalf of a class, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| GLOBAL HEALTHCARE RESOURCE, LLC, d/b/a PHYSICIAN BILLING SERVICES, a Wyoming Limited Liability Company; and Does 1-10, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**COMPLAINT-CLASS ACTION**

**INTRODUCTION**

1. Plaintiff Florence Mussat, M.D., S.C., an Illinois Corporation, brings this action to secure redress for the illegal actions of Defendant Global Healthcare Resource, LLC, d/b/a Physician Billing Services ("Defendant") and Defendant Does 1-10 in sending or causing the sending of unsolicited advertisements in the form of <u>Exhibit A</u> to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and the common law of conversion.

2. The TCPA expressly prohibits unsolicited fax advertising. Unsolicited fax advertising damages the recipients. The recipient is deprived of its paper and ink or toner and the use of its fax machine. The recipient also wastes valuable time it would have spent on something else. Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, and

require labor to attempt to identify the source and purpose of the unsolicited faxes.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question) and 47 U.S.C. § 227 ("TCPA") *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446 (7th Cir. 2005).

4. Venue and personal jurisdiction in this District are proper because Defendant:

(a) Has committed tortious acts in Illinois by causing the transmission of unlawful communications into the state or were sent from inside the state; and

(b) Has an office used for business located in the State of Illinois at 6825 Hobson Valley Drive, Woodbridge, IL 60517.

## PARTIES

5. Plaintiff Florence Mussat, M.D., S.C., an Illinois Corporation with offices in the Chicago metropolitan area, where it maintains telephone facsimile equipment that receives faxes.

6. Defendant Global Healthcare Resource, is a Wyoming Limited Liability Company in good standing with the State of Wyoming and its registered agent for service of process is CT Corporation System, 1720 Carey Ave., Ste. 200, Cheyenne, WY 82001. In Illinois its registered agent and his name is Pramod Zacharias, 6825 Hobson Valley Dr. # 104, Woodbridge, IL 60517.

7. Defendants Does 1-10 are other natural or artificial persons that were involved in the sending, approved of sending, or benefited from the sending of the form facsimile advertisement, a copy of which is attached as Exhibit A.

**FACTS**

8. On February 4, 2011, Plaintiff Florence Mussat, M.D., S.C. received the unsolicited fax advertisement attached as <u>Exhibit A</u> on its facsimile machine.

9. Defendant is responsible for sending or causing the sending of the fax attached hereto as <u>Exhibit A</u>.

10. The sender of the fax attached hereto as <u>Exhibit A</u> intended the fax to be sent to a fax machine that corresponded with the number (773) 868-3700.

11. Defendants Does 1-10 are other natural or artificial persons were involved in the sending, approved of sending, or benefited from the sending of the facsimile form advertisement, a copy of which is attached as <u>Exhibit A</u>.

12. Defendant is the entity whose products or services were advertised in the fax advertisement attached as <u>Exhibit A</u>.

13. The fax refers to a website used by defendant Physician Billing Services, a physical address in Illinois and a telephone number with an Illinois area code.

14. Plaintiff had no prior relationship with Defendant and had not authorized the sending of the fax advertisement, <u>Exhibit A</u>.

15. Such advertizing by fax is associated with the mass broadcasting of advertising faxes.

16. On information and belief, the fax attached was sent as part of a mass broadcasting of faxes.

17. There are no reasonable means for Plaintiff or other recipients of Defendant's unsolicited advertising faxes to avoid receiving illegal faxes. Fax

machines must be left on and ready to receive the urgent communications authorized by their owners; especially those in he medical community to whom Defendant's solicitation is targeting.

18. Furthermore no "opt out notice" as required by the TCPA, even when faxes are sent with consent or pursuant to an established business relationship, was provided in the faxes the form of is attached as <u>Exhibit A</u>.

## COUNT I – TCPA

19. Plaintiff incorporates ¶¶ 1-18 above.

20. The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine . . . ." 47 U.S.C. §227(b)(1)(C).

21. The TCPA, 47 U.S.C. §227(b)(3), provides:

Private right of action.

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–
>   (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>   (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>   (C) both such actions.
> If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.

22. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result. Furthermore, plaintiff's statutory right of privacy was invaded.

23. Plaintiff and each class member are entitled to statutory damages.

24. Defendant violated the TCPA even if their actions were only negligent.

25. Defendant should be enjoined from committing similar violations in the future.

**TCPA - CLASS ALLEGATIONS**

26. TCPA No Opt-Out Class: Plaintiff brings this claim on behalf of a class under the TCPA consisting of (a) all persons with a fax machine that uses a number in either the (773) or (312) area codes (b) who between February 4, 2011, and twenty days after the filing of this Complaint (c) were sent at least one fax by or on behalf of Defendant promoting Physician Billing Services (d) where the fax did not provided an "opt out" notice as described in 47 U.S.C. § 227.

27. TCPA No EBR Class: Plaintiff brings this claim on behalf of a class under the TCPA consisting of (a) all persons with a fax machine that uses a number in either the (773) or (312) area codes (b) that between February 4, 2011, and twenty days after the filing of this Complaint (c) were sent at least one fax by or on behalf of Defendant promoting Physician Billing Services (d) with respect to whom Defendant did not have prior express permission or invitation for the sending of such fax or faxes and (e) with whom Defendant did not have an established business relationship.

28. Each TCPA class as defined above is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of each class defined above.

29. There are questions of law and fact common to the class that

predominate over any questions affecting only individual class members. The predominant common questions include:

    a.    Whether Defendant engaged in a pattern of sending unsolicited faxes;

    b.    The manner in which Defendant compiled or obtained their list of;

    c.    Whether Defendant thereby violated the TCPA;

30. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.

31. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small because it is not economically feasible to bring individual actions.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and each class and against Defendant for:

    a.    Statutory damages under the TCPA;

    b.    An injunction against the further transmission of unsolicited faxes;

    c.    Costs of suit;

    d.    Such other or further relief as the Court deems just and proper.

### COUNT II – ILLINOIS CONSUMER FRAUD ACT

32. Plaintiff incorporates ¶¶ 1-18 above.

33. Defendant engaged in unfair acts and practices, in violation of ICFA § 2/815 ILCS 505/2, by sending unsolicited fax advertising to Plaintiff and others.

6

34. Unsolicited fax advertising is contrary to Illinois public policy, as set forth in 720 ILCS 5/26-3(b), which makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

35. Defendant engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of its advertising.

36. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner that was required to print the fax in the form of Exhibit A.

37. Plaintiff and the class members are left with a lack of meaningful choice because there was no remedy from the harm experienced from the receipt of the fax in form of Exhibit A as Plaintiff and presumably other doctors to whom Defendant's advertisement targeted need to keep their fax machines on for business purposes.

38. While the loss may be small to Plaintiff, in the aggregate to the class, the harm caused by Defendant can be substantial.

39. Defendant engaged in such conduct in the course of trade and commerce.

40. Defendant's conduct caused recipients of their advertising to bear the cost thereof. This gave Defendant an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail. For example, an advertising campaign targeting one million recipients would cost approximately $500,000 if sent by U.S. mail but only approximately $20,000 if done by fax broadcasting. The reason is that

instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink. "Receiving a junk fax is like getting junk mail with the postage due". Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

### ILLINOIS CONSUMER FRAUD ACT – CLASS ALLEGATIONS

41. Plaintiff brings this claim on behalf of a class under the ICFA consisting of (a) all persons with a fax machine that uses a number in either the (773) or (312) area codes (b) who between February 4, 2011, and twenty days after the filing of this Complaint (c) were sent faxes by or on behalf of Defendant promoting Physician Billing Services (d) were the fax did not provided an "opt out" notice as described in 47 U.S.C. § 227.

42. Plaintiff brings this claim on behalf of a subclass class under the ICFA consisting of (a) all persons with a fax machine that uses a number in either the (773) or (312) area codes (b) that between February 4, 2011, and twenty days after the filing of this Complaint (c) were sent at least one fax by or on behalf of Defendant promoting Physician Billing Services (d) with respect to whom Defendant did not have prior express permission or invitation for the sending of such fax or faxes and (e) with whom Defendant did not have an established business relationship.

43. The class and subclass above are so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class and subclass.

44. There are questions of law and fact common to the class that

8

predominate over any questions affecting only individual class members. The predominant common questions include:

    a.    Whether Defendant engaged in a pattern of sending unsolicited faxes;

    b.    Whether Defendant engaged in unfair acts;

    c.    Whether Defendant thereby violated the ICFA;

45. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.

46. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small because it is not economically feasible to bring individual actions.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and each class and against Defendant for:

    a.    Actual damages;

    b.    Attorney's fess and costs of suit; and

    c.    Such other or further relief as the Court deems just and proper.

## COUNT III – CONVERSION

47. Plaintiff incorporates ¶¶ 1-18 above.

48. By sending Plaintiff and the class members unsolicited faxes, Defendant converted to their own use ink or toner and paper belonging to Plaintiff and the class members.

49. Immediately prior to the sending of the unsolicited faxes, Plaintiff and

the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

50. By sending the unsolicited faxes, Defendant appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable. Such appropriation was wrongful and without authorization.

51. Defendant knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

52. Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose.

53. Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

**CONVERSION - CLASS ALLEGATIONS**

54. Plaintiff brings this claim on behalf of a class under the common law of conversion consisting of (a) all persons with a fax machine that uses a number in either the (773) or (312) area codes (b) who between February 4, 2011, and twenty days after the filing of this Complaint (c) were sent faxes by or on behalf of Defendant promoting Physician Billing Services (d) were the fax did not provided an "opt out" notice as described in 47 U.S.C. § 227.

55. Plaintiff brings this claim on behalf of a subclass class under the ICFA consisting of (a) all persons with a fax machine that uses a number in either the (773) or (312) area codes (b) that between February 4, 2011, and twenty days after the filing of this Complaint (c) were sent at least one fax by or on behalf of

Defendant promoting Physician Billing Services (d) with respect to whom Defendant did not have prior express permission or invitation for the sending of such fax or faxes and (e) with whom Defendant did not have an established business relationship.

56. Each class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of each class.

57. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether Defendant engaged in a pattern of sending unsolicited faxes; and

    b. Whether Defendant engaged in the conversion of ink, toner & paper.

58. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.

59. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small because it is not economically feasible to bring individual actions.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendant for:

    a. Actual damages;

11

b. Costs of suit; and

c. Such other or further relief as the Court deems just and proper.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
155 N. Michigan Ave. 560
Chicago, Illinois 60601
(773) 238-9820 (TEL)
cwarner@warnerlawllc.com

### NOTICE OF LIEN

Please be advised that the Warner Law Firm, LLC claims a lien upon any recovery herein for 1/3 of that amount or such an amount as the Court awards.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
(773) 238-9820 (TEL)
cwarner@warnerlawllc.com

### DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendant preserve the numbers in the (773) and (312) area codes that between February 4, 2011, and twenty days after the filing of this Complaint, were sent a fax or faxes by or on behalf of Defendant promoting Physician Billing Services where the fax did not provided an "opt out"

notice.    Plaintiff also demands that Defendant preserve the numbers in the (773) and (312) area codes who between February 4, 2011, and twenty days after the filing of this Complaint, were sent a fax or faxes by or on behalf of Defendant promoting Physician Billing Services where Defendant did not have prior express permission or invitation for the sending of such fax or faxes and with whom Defendant did not have an established business relationship with.

                              Respectfully submitted,

                              s/ Curtis C. Warner
                                 Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
(773) 238-9820 (TEL)
cwarner@warnerlawllc.com

# EXHIBIT A

# FREE NO OBLIGATION 30 DAY TRIAL

Increase Revenue up to 30% with our > 120 Day A/R Follow-up
Up to 40% Reduction in Operating Costs and Up to 20% Increase in Revenue with Full RCM Packages

### FREE SAMPLE CHART AUDIT
(Reduce Denials with our Chart Audits)
Accuracy Level Greater than 95%

Physician Billing Services is so confident that we will meet or exceed your expectations that we are offering our services free of charge for the initial trial period.

We specialize in small to mid-size practices so we are always able to provide you with personalized customer service and support. PBS is a wholly owned subsidiary of Global Healthcare Resource, and to help serve our clients needs, we have a 700 seat call center for our A/R management.

Any of the services we offer can be used independently of each other or combined as a total end to end Revenue Cycle Management package.

Our services include:

- Medical Billing and CPT and ICD-9 Coding
- Eligibility Verification & Pre-Certification
- Demographic & Charge Entry
- Cash Posting
- Denial Management
- Medical Transcription
- EMR Services or Data Conversion (including scanning & attaching)
- E-Prescribe
- Front Office Practice Management
- A/R Follow-Up
- Chart Audit

**48-Hour Commitment to Send out Bills & 30-Day Commitment to Initiate Receivable Follow-Up**

PHYSICIAN BILLING SERVICES
6825 Hobson Valley Dr. Suite 301
Woodridge, Illinois 60517

ROBERT RICOBENE
Sr. Vice President Corp. Development
Tel: 630-598-0330 ext 123
Fax: 630-598-0341
Robert@pbills.com
www.pbills.com