# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FLORENCE MUSSAT, M.D., S.C., an Illinois Corporation, individually and on behalf of a class, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>GLOBAL HEALTHCARE RESOURCE, LLC, and Does 1-3, )<br>)<br>Defendants. ) | Judge Joan B. Gottschall<br><br>Case No. 11 C 7035 |

## MEMORANDUM OPINION & ORDER

Plaintiff Florence Mussat, M.D., S.C. brings a purported class action against Defendant Global Healthcare Resource, LLC ("GHR"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505/2 ("ICFA"), and the Illinois common law of conversion. The alleged violations are all related to the transmission of unsolicited faxes. Now before the court is Mussat's motion for class certification pursuant to Federal Rule of Civil Procedure 23, along with Mussat's motion to declare admissible a fax log provided to Mussat by GHR's former counsel. For the reasons explained below, the court finds that the fax log is admissible, and that the proposed class meets the requirements of Rule 23(a) and (b)(3).

### I. BACKGROUND

Dr. Florence Mussat is a cosmetic surgeon who runs the plaintiff corporation. Mussat's fax number is listed on the corporation's website. Mussat testified at deposition that she received a fax sent by GHR on behalf of its subsidiary Physician Billing Services ("PBS") on February 4,

2011. (Pl.'s Mot. for Class Certification Ex. 2 at 42, ECF No. 41-1.) The subject fax states that PBS is a subsidiary of GHR that provides medical billing and other services to small and mid-sized medical practices. (Pl.'s Mot. for Class Certification Ex. 1.) According to GHR's 30(b)(6) witness, PBS's Vice-President Robert Ricobene, GHR did not have a prior relationship with Mussat before sending Mussat the fax. (Pl.'s Mot. for Class Certification Ex. 5 at 36.) Ricobene testified that PBS had "about six" existing clients during February 2011. (Def.'s Resp. to Mot. for Class Certification Ex. 2 at 19, ECF No. 45-2.) PBS employees Nancy Rosales and April Pfieffer testified at deposition that PBS's fax machine was located in their office area. (Pl.'s Mot. for Class Certification Ex. 6 at 5, Ex. 7 at 7.) Ricobene testified that the subject fax was primarily used "for outside marketing," and "was not used in fax solicitations." (Def.'s Resp. to Mot. for Class Certification Ex. 2 at 28.)

Plaintiffs submits as evidence in support of its class certification motion fax logs provided to them by GHR's former counsel for February 4, 2011, and February 7, 2011. (Pl.'s Mot. for Class Certification Ex. 3.) They also submit PBS's phone logs. (Pl.'s Mot. for Class Certification Ex. 4.) The fax logs show that 47 faxes were sent during a 72-minute period on each of those days. Each fax transmission lasted less than one minute. Plaintiffs contend that some of the fax numbers shown on the logs belong to doctors' offices who were not existing clients of PBS, and that the phone logs do not show that PBS ever called the offices prior to sending the faxes. Ricobene testified that PBS phone logs showed that a follow-up call was made to Mussat on February 7, 2011, after the fax was sent. (Def.'s Resp. to Mot. for Class Certification Ex. 2 at 27.)

Section 227(b)(1)(C) of the TCPA states:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--

> . . . .
>
> > (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless--
> >
> > > (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;
> > >
> > > (ii) the sender obtained the number of the telephone facsimile machine through--
> > >
> > > > (I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or
> > > >
> > > > (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,
> > >
> > > except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before such date of enactment; and
> > >
> > > (iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D).

47 U.S.C. § 227(b)(1)(C).

Mussat's complaint alleges in count I that GHR violated the TCPA by sending unsolicited faxes, and that Mussat and other class members suffered damages as a result of their receipt of the unsolicited faxes. Mussat seeks statutory damages under the TCPA, an injunction against the further transmission of unsolicited faxes, and costs. In count II, Mussat alleges that GHR violated the ICFA, 815 Ill. Comp. Stat. 505/2, by sending unsolicited fax advertising, and that Mussat and other class members suffered damages as a result of their receipt of the faxes. Mussat alleges in count III that GHR committed conversion, in violation of Illinois common law, by sending unsolicited faxes and thereby converting to its own use ink or toner and paper belonging to the class members.

GHR answered the complaint on November 11, 2011. Mussat filed an amended motion for class certification on July 13, 2012. Mussat filed an amended complaint on September 10, 2012, changing the caption to reflect the fact that GHR no longer does business under the name PBS, and removing some John Doe defendants. GHR answered the amended complaint on October 22, 2012, and filed an amended answer on January 30, 2013. On February 13, 2013, the court granted Mussat's motion to amend the proposed class definition in the complaint and the motion for class certification. The class definition proposed by Mussat for each of the three putative classes is:

> (a) all persons with a fax machine (b) who on February 4, 2011, or February 7, 2011 (c) received at least one fax by or on behalf of Defendant Global Healthcare Resource, LLC doing business under the name Physician Billing Services promoting Physician Billing Services in the form of <u>Exhibit A</u> (d) with respect to whom Defendant did not have prior express permission or invitation for the sending of such fax or faxes according to Defendant's records and (e) with whom Defendant did not have an established business relationship.

(Pl.'s Mot. to Amend Class Definition 4, ECF No. 75.)

## II. LEGAL STANDARD FOR CLASS CERTIFICATION

Federal Rule of Civil Procedure 23 allows class certification when the proposed class satisfies all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Wal-Mart, Inc. v. Dukes*, ––U.S.––, 131 S. Ct. 2541, 2548 (2011). The court need not accept the allegations in the complaint as true. *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Under *Wal-Mart*, the party seeking class certification must demonstrate with proof, at the class-certification stage, that the requirements of Rule 23 are satisfied. The court must engage in a "rigorous analysis" touching on the merits of the underlying claim. *Id*. at 2551-52.

Rule 23(a) lists the following prerequisites for class certification: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact

common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *Wal-Mart*, 131 S. Ct. at 2548. These four requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart*, 131 S. Ct. at 2550 (internal quotation marks omitted).

Mussat requests certification pursuant to Rule 23(b)(3), which applies when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [when] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Relevant to this inquiry are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*.

### III. ANALYSIS

**A. Admissibility of the Fax Log**

On December 23, 2011, GHR's former counsel emailed Mussat's counsel the fax log upon which Mussat relies in defining the class in this action. GHR's counsel made the following representation:

> Attached, please find an excel spreadsheet which lists all of the fax transmissions that were made by Physician Billing Services ("PBS") from 9/1/10 through 11/28/11. Listed below is an explanation as to how to interpret the data contained in the spreadsheet.

(Pl.'s Mot. to Deem the Fax Log Admissible Ex. A, ECF No. 71-1.) GHR now seeks, in its sur-reply to the motion for class certification, to challenge the fax log as inadmissible, arguing that it

has not been properly authenticated because Plaintiff did not depose a representative of CBeyond, GHR's telephone company, and because GHR and its employees do not have knowledge as to the record-keeping practices of CBeyond.

It is within the discretion of the court to grant or deny a motion to strike the exhibits offered in support of or in opposition to a motion. *See Stinnett v. Iron Works Gym/Executive Health SPA, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). The court will not strike the fax log. According to Mussat, GHR supplied the fax log during discovery and indicated that it listed GHR's fax transmissions. Since "the very act of production [i]s implicit authentication," the fax log has been authenticated and the court may consider it in deciding the class certification motion. *United States v. Brown*, 688 F.2d 1112, 1116 (7th Cir. 1982) (holding that defendant's production of records was implicit authentication that satisfied Federal Rule of Evidence 901); *see also Hood v. Dryvit Sys., Inc.*, No. 04 CV 3141, 2005 WL 3005612, at *3 (N.D. Ill. Nov. 8, 2005) (declining to strike exhibits supplied by defendants during discovery); *Fenje v. Feld*, 301 F. Supp. 2d 781, 809 (N.D. Ill. 2003) ("Documents produced by an opponent during discovery may be treated as authentic."). GHR may, of course, argue that the log is not accurate, or that its contents do not support an inference that the faxes listed were unsolicited. The Seventh Circuit has explained that "[a]uthentication relates only to whether the documents originated from [the alleged source]; it is not synonymous to vouching for the accuracy of the information contained in those records." *Brown*, 688 F.2d at 1116.

**B. Rule 23(a)**

    1. <u>Numerosity</u>

Rule 23(a)(1) requires that the proposed class be large enough to make joinder impracticable. Here, Mussat asserts that there are at least 87 class members. This is based on

GHR's fax logs from February 4, 2011, and February 7, 2011, which show that, during a 72-minute period on each of those days, 47 fax numbers were dialed, and 43 and 44 faxes were received. (Pl.'s Mem. in Supp. Class Cert. Ex. 1-2, ECF No. 33.) Plaintiff's evidence supports the inference that a one-page fax such as that received by Plaintiff was being repeatedly transmitted to the numbers on the fax log. The court finds the size of the proposed class adequate to satisfy the numerosity requirement. *See Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 335 (N.D. Ill. 2006) ("[C]ourts in this circuit have concluded that 40 or more class members is generally sufficient to fulfill the numerosity requirement."). Although the defendants argue that Plaintiff has failed to properly authenticate the fax log as evidence, as explained above, the court deems the fax log admissible.

GHR further argues that Mussat has not proven that the fax numbers shown on the fax log represent the transmission of unsolicited faxes. That is an argument that the class members' TCPA claims fail on the merits. *See Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("Under [Rule 23], certification is largely independent of the merits . . ., and a certified class can go down in flames on the merits."). Even if it eventually proves true that GHR sent no unsolicited faxes, or no unsolicited faxes other than those received by Mussat herself, Mussat has presented sufficient evidence to meet the numerosity requirement.

2. Commonality

The commonality inquiry focuses on whether a class-wide proceeding will "generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551. It is similar to the predominance requirement of Rule 23(b)(3), but "the predominance criterion is far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). As

Mussat must prove not only commonality but predominance to prevail on this motion, the court will elaborate on the question of commonality below, as part of the Rule 23(b)(3) analysis.

3. Typicality

Typicality requires that the named plaintiff's claims be typical of those of the class at large, rather than premised on varying practices or diverging courses of conduct by the defendants. *See Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596-98 (7th Cir. 1993). Here, Mussat alleges that all of the putative plaintiffs were subject to the same marketing practice by GHR. The court finds that Mussat's claims are typical of the class, to the extent that all the class members' claims are based on the theory that the defendants sent them unsolicited faxes without any prior communications. GHR presses the argument that Mussat has not demonstrated that the faxes were unsolicited, or that the fax advertisement was actually sent to the recipients listed on the fax log, but again, that is an argument that the TCPA claims fail on their merits, and it rests on questions of fact that are currently in dispute as to whether the fax recipients authorized GHR to send them information and what was sent to them.

4. Adequacy

The adequacy factor requires that the named plaintiff's claims and interests not conflict with those of the class, that the class representatives have sufficient interest in the outcome of the case, and that class counsel be experienced and competent. *Retired Chi. Police Ass'n*, 7 F.3d at 598. Mussat's counsel has significant experience litigating class action lawsuits. (Pl.'s Am. Mot. Class Certification Ex. B (Affidavit), ECF No. 38-1.) Defendants take no issue in their response to the motion for class certification with the qualifications of Mussat's counsel, or with Mussat's suitability as a class representative. The court concludes that the adequacy requirement is met because the named plaintiff has participated actively in the case by submitting to a

deposition, class counsel has significant experience bringing class-action claims, including claims under the TCPA, and there is no indication that Mussat's interests are antagonistic to those of other class members.

**C. Rule 23(b)(3)**

Under Rule 23(b)(3), the court may certify a class only if (1) questions of law or fact common to the class members predominate over questions affecting individual class members, and (2) a class action is superior to other methods of adjudicating the claims.

1. Predominance

The Seventh Circuit recently explained the predominance requirement of Rule 23(b)(3):

> Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication. Or, to put it another way, common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class. If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question. Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (internal citations, alterations, and quotation marks omitted). The more common issues predominate, the more desirable a class-action lawsuit will be. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). The fact that individual assessment of damages will be necessary should plaintiffs prevail does not preclude a finding that common issues predominate. *See Wal-Mart*, 131 S. Ct. at 2558 (stating that it is "clear that individualized monetary claims belong in Rule 23(b)(3)").

In this case, Mussat argues that questions of law and fact common to the class predominate over individualized questions, and that the common issue in this case is whether

9

GHR sent a particular fax to the class members without consent. The court notes that other common questions are the manner in GHR assembled its fax list and whether GHR's practice was to contact fax recipients before sending them a marketing fax.

The court notes that in some cases, the need for "mini trials" as to the issues of consent and previous business relationships have rendered class certification inappropriate. For example, a fellow district court held that individualized questions predominated in a case where the defendant "introduced evidence that it elicited consent from every recipient that was not already a customer." *G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09 C 5528, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011). Based on this evidence, the court feared "it would have to engage in a class-member-specific inquiry to determine whether each recipient did indeed give permission or have an established business relationship with Defendant at the pertinent time." *Id.* Here, however, GHR has not produced evidence of that nature. The evidence before the court consists of GHR's responses to Mussat's discovery requests, and the deposition testimony of GHR's employees. GHR indicated that some of the numbers on the fax logs corresponded to its existing clients, but did not present evidence that every number belonged to an entity with which it had a business relationship. Unlike the evidence produced in *G.M. Sign*, this response does nothing to establish whether some fax recipients actually consented to receipt of the fax, and it suggests that the key inquiry will be the manner in which GHR developed its fax recipient list, not the nature of the relationship between GHR and each putative plaintiff. That question is subject to generalized proof.

Although this case does present individual questions as to the content of the faxes the individual entities received and whether the faxes were solicited, the court concludes that, based on the evidence presently before it, common issues predominate. Other district courts have held

that common issues predominate in TCPA cases even where some recipients may have given permission to the defendant to send them faxes. *See, e.g.*, *Reliable Money Order, Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 337 (E.D. Wis. 2012) ("The individual issues . . . relate to the need to determine whether some of the recipients gave permission to receive the faxes prior to transmission or whether individual plaintiffs had an established business relationship with the defendant . . . . However, such issues are minor and can certainly be handled within the framework of a class action."); *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744, at *5 (N.D. Ill. Sept. 30, 2011).

    2. Superiority

The court also considers the Rule 23(b)(3) factors in evaluating whether a class action is a superior method to adjudicate the claims at issue: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Courts in this district have held that proceeding as a class is a superior method of adjudicating TCPA violations, and that Congress did not expressly preclude class complaints under the TCPA. *See, e.g.*, *Reliable Money Order*, 281 F.R.D. at 339; *Bridgeview*, 2011 WL 4628744, at *6. Here, individual plaintiffs would be unlikely to pursue an action on their own, given the fairly small potential for individual recovery. There is no indication that other class members have commenced litigation against the defendants, and managing the class action does not appear to present any special difficulties. The court finds that a class action is the superior method for the adjudication of the class members' claims.

**C. Class Definition**

On February 13, 2013, the court granted Mussat's motion to amend the proposed class definition in the complaint and the motion for class certification. (ECF No. 79.) As stated above, the class definition proposed by Mussat for each of the three putative classes is:

> (a) all persons with a fax machine (b) who on February 4, 2011, or February 7, 2011 (c) received at least one fax by or on behalf of Defendant Global Healthcare Resource, LLC doing business under the name Physician Billing Services promoting Physician Billing Services in the form of <u>Exhibit A</u> (d) with respect to whom Defendant did not have prior express permission or invitation for the sending of such fax or faxes according to Defendant's records and (e) with whom Defendant did not have an established business relationship.

(Pl.'s Mot. to Amend Class Definition 4.) The court adopts the proposed class definition as amended and certifies the class as defined above.

### IV. CONCLUSION

Mussat's motion to certify a class is granted. The court appoints Mussat as class representative and Mussat's counsel, the Warner Law Firm, LLC, as class counsel.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 13, 2013